Alphonse Fletcher, Jr.
188 Minna Street
San Francisco, CA 94105
(212)284-4808
Alphonse.Fletcher@Fletcher.com
*PRO SE* Defendant Alphonse Fletcher, Jr.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP, )
)
Plaintiff, )
)
vs. )
)
ALPHONSE FLETCHER, JR. and )
FLETCHER ASSET MANAGEMENT, INC. )
)
Defendants. )
)
_____ )

CASE NO. _____

**[formerly Supreme Court
of The State of New York
County of New York
Case No. 158590/2013]**

## NOTICE OF REMOVAL

Defendant Alphonse Fletcher, Jr. ("Fletcher") hereby removes Case No. 158590/2013

from the Supreme Court of The State of New York, County of New York, to the United States

District Court for the Northern District of California pursuant, to 28 U.S.C. Section 1332, 1441,

and 1446, and as grounds for its removal states as follows:

### STATEMENT OF THE CASE

1.      On September 19, 2013 Plaintiffs KASOWITZ, BENSON, TORRES &   FRIEDMAN,

LLP, ("Kasowitz") filed a Complaint in the Supreme Court of The State of New York,

County of New York, styled KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP,

vs. ALPHONSE FLETCHER, JR. and FLETCHER ASSET MANAGEMENT, INC.,

Case No. 158590/2013 against Fletcher Asset Management, Inc. ("Management") and

Fletcher (the "State Court Action"). A copy of the Complaint is attached as **Exhibit A**

hereto.

2.      Kasowitz represented Fletcher International, Ltd. ("International") and its affiliates

Management and Fletcher in matters related to the unlawful retaliation that led to and

continues during the litigation styled as *"Alphonse Fletcher, Jr. and Fletcher Asset*

*Management, Inc. v The Dakota Inc., Bruce Barnes, and Peter Nitze"* filed by

Management and Fletcher in The Supreme Court of The State of New York ("Fletcher v

Dakota").

3.      In 2010, certain shareholders controlling the board of Manhattan's Dakota cooperative

apartment building ("Dakota Parties") promised to use the substantial influence of

Dakota shareholders to destroy Fletcher's funds, his business, and his family. Similar

threats had been made and acted upon by the Dakota Parties since 2007 when Fletcher

began to have success in his opposition to the unlawful practices of the Dakota Parties.

4.      Management and Fletcher filed "Fletcher v Dakota" in February, 2011 response to

escalating threats, breaches of fiduciary duty, tortious interference, defamation,

discriminatory conduct, and other retaliation by the Dakota Parties.

5.      The Dakota Defendants' including the individual defendants, each of whom is a former

board president, filed a motion to dismiss the case which was denied by the trial court in

2011. The Dakota Defendants' appeal of that decision was also denied by the Appellate

Division in 2012. Coop directors no longer are immune from the consequences of their responsibility for any tortious acts.

6. Now, almost three years following the filing of the suit, The Dakota has produced fewer than 25,000 pages of discovery. Management and Fletcher have produced more than 300,000 pages including inadvertent productions which the Dakota Defendants have refused to return. Further, Fletcher has been informed that the Dakota Defendants' counsel have violated the Court's confidentiality order.

7. Further, the Dakota Parties conduct has chilled the participation of witnesses that had previously volunteered to testify, interfered with Management's contracts relating to colleagues, service providers, access to assets, and investment contracts, abused process with respect to state, foreign, and federal courts, and repeatedly made false allegations to various government agencies and officials.

8. In July, 2011, in an effort to confront the interference by the Dakota Parties, their agents, and their allies, International, Management, and Fletcher added Kasowitz to their legal team. Kasowitz entered into three separate retention contracts and received three separate retainers from the three clients. Kasowitz would lead the legal team.

9. Managing Partner Marc Kasowitz promised he would rely upon his strong relationships with a Prominent Law Firm and an International Media Company to try to persuade each of them to terminate their participation in any wrongdoing particularly any unlawful interference with International and its affiliates. On information and belief, Kasowitz derives substantial revenue from the two relationships and its work with each involves,

directly or indirectly, significant issues relating to federal anti-discrimination and anti-retaliation law.

10. After several weeks, it became clear that Kasowitz and its co-counsel were not providing the representation for which International, Management, and Fletcher contracted. Fletcher's multiple requests for assistance were met with explanations of how the law did not offer any opportunities to petition the court regarding the ongoing interference.

11. The two Kasowitz partners representing Fletcher quickly moved to a new much bigger case into which Kasowitz was invited by the Prominent Law Firm. At least three other partners and various teams of associates replaced the original two partners. Issues arose regarding conflicts, staffing, privilege, costs, strategy and other problems.

12. In October, 2012, Kasowitz suddenly withdraw from the case, refused to deliver documents to replacement counsel, and took other actions its former clients considered harmful.

13. In September 2013, Kasowitz brought the State Court Action against its former clients.

14. The State Court Action purports to assert three causes of action: (a) Breach of Contract, (b) Quantum Meruit, (c) Account Stated. Each of Plaintiff's claims is based on its contention that Fletcher and Management breached contracts with Plaintiff and must pay Plaintiff certain legal fees for services it purports to have provided.

15. The Plaintiff seeks the sum of $2,304,630.54.

## FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. SECTION 1331

16. This Court has proper jurisdiction over this matter under 28 U.S.C. Section 1331 because Plaintiff's conduct, particularly its conduct as Defendants' counsel in civil rights

cases, presents important federal questions. With questions involving the interpretation of, among other statutes, 42 U.S.C. Section 1981, Section 1985, and Section 3617, "it may be assumed that federal judges will have more experience." Yellow Freight System, Inc. v. Donnelly, 494 U.S. 820, 826, 110 S.Ct. 1566. Plaintiff's entitlement to the substantial fees it claims depends on, among other factors, whether Plaintiff provided adequate legal representation. One determinant of the adequacy of the representation is the correctness of Plaintiff's advice that no opportunity existed, including under federal law and the U.S. Constitution, to petition the court for relief from the Dakota Parties' documented ongoing retaliation in multiple jurisdictions. Resolution of this and other important questions of law requires the parties to "resort to the experience, solicitude, and hope of uniformity that a federal forum offers." Singh v. Duane Morris, Case No. 07-20321 (5th Cir., July 30, 2008) (Smith, J.). Federal court is a particularly appropriate forum given the challenge this Complaint creates to the principles that "private citizens are to be able to assert their civil rights" and "those who violate the Nation's fundamental laws are not to proceed with impunity." S.Rep. No. 94-1011, at 2 (1976), reprinted in 1976 U.S.C.C.A.N. 5908, 5910

17.     Plaintiff's Breach of Contract claim presents federal questions regarding Plaintiff's obligations to honor its contractual obligations to Defendants under 42 U.S.C. Section 1981. Plaintiff's "relationships" or other influences may have affected its conduct to an extent sufficient to deprive Defendants of their rights to the enjoyment of all benefits, privileges, terms, and conditions of their contracts with Plaintiff.

18.    With respect to Plaintiff's conduct during and after its representation of Defendants, this
       Court reasonably might find that Plaintiff exercised provisions of the agreements in a
       contractually correct manner but to achieve an unlawful objective. Such conduct could
       be violative of 42 U.S.C. Section 1981 to the extent it deprived Defendants of their
       rights to sue, be parties, give evidence, and to the full and equal benefit of all laws and
       proceedings for the security of persons and property.

19.    Plaintiff's conduct may be interpreted by this Court to suggest Plaintiff's intention to
       coerce, intimidate, threaten, or interfere with Defendants and their affiliates in their
       exercise and enjoyment of, on account of their having exercised and enjoyed, and on
       account of their having aided and encouraged other persons in the exercise and
       enjoyment of rights granted and protected by The Constitution and federal housing law
       in violation of 42 U.S.C. Section 3617.

20.    Certain coordination observed between Plaintiff and other parties in relation to federal
       courts or officials, for example, the purported acrimonious communications with the
       Fletcher International, Ltd. Chapter 11 Trustee which Plaintiff claimed peaked a few
       weeks prior to Plaintiff's filing the State Court Action, could possibly affect how an
       official such as the Trustee discharges his duties. This Court might interpret the details
       of such coordination and interactions in certain circumstances as hindering or
       obstructing an official's discharge of her duties in violation of 42 U.S.C. Section
       1985(1).

21.    Plaintiff's current State Court Action against Defendants and concurrent related actions
       by other parties might be interpreted under 42 U.S.C. Section 1985(2) as efforts to deter

NOTICE OF REMOVAL

6

by intimidation or threat Defendants from attending important upcoming federal court proceedings in the Southern District of New York and testifying freely, fully, and truthfully to matters involving their affiliate International.

22.    Plaintiff's failure, despite Bar ethics and canons, to make a zealous effort resolve issues with its client relating to advocacy, conflicts, staffing, privileges, costs, strategy, and the clients' rights to petition the Courts might be interpreted as unlawful under 42 U.S.C. Section 1985(2) especially in the context of the coordination between Plaintiff's with other certain other parties. Plaintiff's conduct might appear to have been done for the purpose of impeding, hindering, obstructing, or defeating the course of justice in The Supreme Court in the State of New York with intent to deny Defendants the equal protection of the laws, or to injure them or their property for lawfully enforcing, or attempting to enforce, their rights and the rights of other people and classes of people, to the equal protection of the laws.

23.    Plaintiff's actions and failure to take actions have facilitated the purported "privileged" actions undertaken by the Dakota Parties pursuant to their counsel's "Public Strategy" described on their website.[1] If shown to be for the purpose of depriving, directly and indirectly, Defendants of the equal protection of the laws and of equal privileges and immunities under the laws, such actions and failure to take actions might be interpreted as violations of 42 U.S.C. Section 1985(3).

24.    Another reason why this Court has proper jurisdiction is that the controversy does not involve a res over which another court has assumed jurisdiction. Additionally, the

---

[1] http://www.quinnemanuel.com/practice-areas/public-strategy-in-high-profile-litigation.aspx

federal district court in the Northern District of California would serve as a forum and
venue convenient to Kasowitz's San Francisco office with which Fletcher's family has
worked and to Fletcher's primary residence.  Further, if Fletcher files counter-claims,
they are likely to be filed in this Court thus this Court's exercise of jurisdiction should
help avoid piecemeal litigation.  Proceedings in this matter have not yet advanced
elsewhere.

25.     Most fundamentally, the important federal questions, such as those raised by Kasowitz's
        State Court Action and prior conduct, against its former clients during the course of their
        challenging civil rights litigation, are presumed to be best adjudicated in federal courts.
        Kasowitz collected approximately $1,000,000 from its clients, withdrew from their
        representation without providing the services for which they contracted, and now, among
        other adverse actions, sues them demanding an additional $2,304,630.54.  In civil rights
        cases such as this, "the function of an award of attorney's fees is to encourage the
        bringing of meritorious civil rights claims which might otherwise be abandoned because
        of the financial imperatives surrounding the hiring of competent counsel."    Kerr v.
        Quinn, 692 F.2d 875, 877 (2d Cir.1982).   "If private citizens are to be able to assert their
        civil rights, and if those who violate the Nation's fundamental laws are not to proceed
        with impunity, then citizens must have the opportunity to recover what it costs them to
        vindicate these rights in court."   S.Rep. No. 94-1011, at 2 (1976), reprinted in 1976
        U.S.C.C.A.N. 5908, 5910.

DIVERSITY JURISDICTION UNDER 28 U.S.C. SECTION 1332(a)

26.    This Court has jurisdiction over this matter under 28 U.S.C. Section 1332(a) because

       there is complete diversity of citizenship between Plaintiff and Fletcher, more than

       $75,000, exclusive of interest and costs, is at stake, and the error resulting from

       Plaintiff's nominally joining Fletcher and Management.  Kasowitz has no claim on

       Fletcher for legal fees purportedly owed by Management and no claim on Management

       for legal fees purportedly owed by Fletcher.

27.    Plaintiff alleges that it is a resident of New York.  Plaintiff has a San Francisco office

       with which Fletcher's family has done business.

28.    Fletcher is a resident of California.

29.    Plaintiff seeks $2,304,630.54 thus well in excess of $75,000 is in controversy and the

       jurisdictional threshold under 28 U.S.C. Section 1332(a) is satisfied.


**ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED**

30.    Pursuant to 28 U.S.C. 1446(a) a true and correct copy of all of the process, pleadings,

       orders, and documents from the State Court Action which have been served upon

       Fletcher are being filed with this Notice of Removal.  Fletcher will file true and legible

       copies of all other documents on file in the State Court Action as well as a certification

       pursuant to Local Rules within 30 days of the filing of this Notice of Removal.

31.    This Notice of Removal was intended to be filed online on October 28, 2013 within 30

       days of the date that Kasowitz purported to serve Fletcher with the State Court Action by

       email or otherwise cause Fletcher "embarrassment."  Defendant Fletcher was unable to

establish a *Pro Se* Electronic Court Filings account and instead respectfully requests the Court accept his filing of this Notice of Removal in person on October 29, 2013 and consider this Removal timely in accordance with 28 U.S.C. Section 1446(b).

32.     Venue is proper in this Court pursuant to 28 U.S.C. Section 1441(a) and 1446(a) because the U.S. District Court for the Northern District of California is the federal judicial district in which Fletcher resides.

## INTRADISTRICT ASSIGNMENT

33.     Fletcher resided in San Francisco as of Kasowitz's filing of the State Court Action and during the period in which Plaintiff claims Fletcher should have made payment to Plaintiff.

## CONCLUSION

By this Notice of Removal, Fletcher does not waive any objections it may have as to service, jurisdiction or venue, or any other defenses or objections it may have to this action. Fletcher intends no admission of fact., law or liability by this Notice, and expressly reserves all defenses, motions, and/or pleas.

Dated: October 28, 2013

Alphonse Fletcher, Jr. (*Pro Se*)
188 Minna Street
San Francisco, CA 94105
(212) 284-4808
Alphonse.Fletcher@Fletcher.com

### *CERTIFICATE OF SERVICE*

*This is to certify that the foregoing NOTICE OF REMOVAL, with exhibits, was sent via email, in*

*the same manner as service was agreed and accepted by Defendant Alphonse Fletcher, Jr. and an*

*additional copy will be sent by United States mail postage prepaid thereon to:*

Mitchell R. Schrage
Joshua A. Siegel
1633 Broadway
New York, NY 10019
(212)506-1700

Attorneys for Plaintiffs
KASOWITZ, BENSON, TORRES &
FRIEDMAN, LLP

Floyd S. Saunders
Fletcher Asset Management
48 Wall Street
Fourth Floor
New York, NY 10005
(212)284-4800

Attorney for Defendant
FLETCHER ASSET MANAGEMENT, INC.

**Exhibit A**

**Complaint**

FILED: NEW YORK COUNTY CLERK 09/19/2013

NYSCEF DOC. NO. 1

INDEX NO. 158590/2013

RECEIVED NYSCEF: 09/19/2013

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------X
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP,

                  Plaintiff,

        -against -

ALPHONSE FLETCHER, JR. and FLETCHER ASSET
MANAGEMENT, INC.,

                  Defendants.

----------------------------------------------------------------------X

Index No.:
Date purchased:

Plaintiff designates
New York County
as the place of trial

**SUMMONS**

The basis of venue is
Plaintiff's place of business:
1633 Broadway
New York, New York 10019

**To the above named Defendants:**

    **You are hereby summoned** to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a
notice of appearance, on the Plaintiff's Attorneys within twenty (20) days after the service
of this summons, exclusive of the day of service (or within 30 days after the service is
complete if this summons is not personally delivered to you within the State of New
York); and upon your failure to answer, judgment will be taken against you for by default
for the relief demanded in the complaint.

Dated: New York, New York
      September 19, 2013

By: _____
Mitchell R. Schrage, Esq.
Joshua A. Siegel, Esq.
Kasowitz, Benson, Torres & Friedman LLP
Attorneys for Plaintiff
1633 Broadway
New York, New York 10019
(212) 506-1700

TO:    Alphonse Fletcher, Jr.
      48 Wall Street, 5th Floor
      New York, New York 10005

      Fletcher Asset Management, Inc.
      48 Wall Street, 5th Floor
      New York, New York 10005

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------X
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP,

                            Plaintiff,

        -against-

ALPHONSE FLETCHER, JR. and FLETCHER ASSET
MANAGEMENT, INC.,

                        Defendants.
----------------------------------------------------------------------X

Index No.:

**COMPLAINT**

Plaintiff Kasowitz, Benson, Torres & Friedman LLP ("KBTF"), for its Complaint against

defendants Alphonse Fletcher, Jr. ("Fletcher") and Fletcher Asset Management, Inc. ("FAM")

(collectively, "Defendants"), alleges as follows:

### PARTIES

1.      KBTF, a New York limited liability partnership, is a law firm with an office

located at 1633 Broadway, New York, New York 10019.

2.      Defendant Fletcher was and is an individual residing and working in the City,

County and State of New York. Defendant Fletcher was and is a principal of FAM.

3.      Defendant FAM was and is a domestic corporation organized and existing

under the laws of the State of New York with principal offices located at 48 Wall Street, New

York, New York 10005.

### JURISDICTION AND VENUE

4.      Personal jurisdiction over Defendants is proper pursuant to CPLR §§ 301 and

302.

5.      Venue is proper in New York County pursuant to CPLR § 503 in that at least

one party resides in this county.

6.     As the amount in controversy exceeds $50,000, there is no jurisdiction for arbitration pursuant to Part 137 of the Rules of the Chief Administrator of the Courts of the State of New York.

FACTS

7.     Pursuant to written retainer agreements dated July 29, 2011 (collectively, the "Retention Agreement"), Defendants engaged KBTF to perform professional legal services. KBTF thereafter performed such professional legal services for the benefit of Defendants, and incurred expenses and disbursements attendant thereto. KBTF performed such services, and Defendants accepted such services, without objection, protest or rejection.

8.     The services rendered by KBTF to Defendants pursuant to the Retention Agreement were contracted for and were substantially performed in the City, County and State of New York.

9.     Pursuant to the Retention Agreement, KBTF provided professional legal services, including representing Defendants in a lawsuit in the Supreme Court of the State of New York, County of New York against The Dakota, Inc., and others, entitled *Alphonse Fletcher, Jr. and Fletcher Asset Management, Inc. v. The Dakota, Inc., et al.*, No. 101289/11 (the "Dakota lawsuit"), in which Defendants herein alleged, among other things, discrimination arising from the denial of Fletcher's application to purchase a residential cooperative apartment, defamation of Fletcher and FAM, and other claims.

10.    In reliance on and pursuant to the Retention Agreement, during the period from July 29, 2011 through the termination of KBTF's representation of Defendants on November 30, 2012, KBTF provided professional legal services, and advanced reasonable and necessary expenses and disbursements, for the benefit of Defendants.

2

NOTICE OF REMOVAL

11.     Defendants agreed to pay KBTF the sums of monies representing those usually and customarily charged by KBTF, as well as all expenses incurred.  KBTF provided to Defendants invoices for the services KBTF rendered and for the related expenses incurred. Defendants did not object to, protest, or reject such invoices.

12.     To date, KBTF has received partial payments of its invoices in the amount of $998,534.79, leaving an unpaid balance owed by Defendants to KBTF in the amount of $2,304,630.54.

### AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Contract)

13.     KBTF repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as though more fully set forth at length herein.

14.     The Retention Agreement is a valid and enforceable contract between the parties.

15.     KBTF has performed each and every obligation under the Retention Agreement.

16.     Defendants breached its obligations under the Retention Agreement by paying KBTF only a partial balance of $998,534.79, after which Defendants ceased paying any of the fees and disbursements incurred under the Retention Agreement, and although Defendants continued to accept the services provided by KBTF without objection, protest or rejection.

17.     Despite repeated demands for payment from KBTF to Defendants, there remains outstanding and due KBTF from Defendants the sum of $2,304,630.54.

3

18.    By reason of the foregoing breach of contract, KBTF has been damaged in the sum of $2,304,630.54.

AS AND FOR A SECOND CAUSE OF ACTION

(Quantum Meruit)

19.    KBTF repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as though more fully set forth at length herein.

20.    KBTF fully performed its obligations to Defendants under the Retention Agreement by providing legal representation and advice in the Dakota lawsuit, and other related legal services.

21.    Defendants accepted KBTF's services at all times without objection, protest or rejection and allowed KBTF to continue to provide services to Defendants in the Dakota lawsuit, even after Defendants ceased paying fees and disbursements to KBTF.

22.    The fair and reasonable value of the services rendered by KBTF to Defendants at Defendants' specific request commencing on or about July 29, 2011 that remains unpaid is $2,304,630.54.

23.    Despite demands for payment from KBTF to Defendants, there remains outstanding and due KBTF from Defendants the sum of $2,304,630.54.

24.    By reason of the foregoing, and pursuant to the theory of quantum meruit, KBTF has been damaged in an amount not less than $2,304,630.54.

4

### AS AND FOR A THIRD CAUSE OF ACTION

#### (Account Stated)

25. KBTF repeats, reiterates and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as though more fully set forth at length herein.

26. Commencing on or about September 14, 2011 and periodically thereafter, KBTF rendered to Defendants invoices for services rendered and expenses generated, all of which invoices, at the time sent, were received by Defendants without objection, protest or rejection.

27. By reason of the foregoing, Defendants are liable to KBTF, pursuant to the theory of account stated, in an amount not less than $2,304,630.54.

**WHEREFORE,** KBTF demands judgment against Defendants:

a) On each of its three causes of action in an amount not less than $2,304,630.54, together with interest and costs;

b) Awarding such other and further relief as this Court deems just and proper.

Dated:   New York, New York
September 19, 2013

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By:

Mitchell R. Schrage
Joshua A. Siegel
1633 Broadway
New York, NY 10019
(212) 506-1700

5

NOTICE OF REMOVAL
18